UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>LEANDRO LEGASPI,<br><br>                              Defendant. | Case No.: 18-cr-1671-2-L<br><br>**ORDER DENYING MOTION TO REDUCE SENTENCE PURSUANT TO FIRST STEP ACT, 18 U.S.C. § 3582(c)(1)(A)(i) [ECF NO. 59]** |

On August 18, 2020, Defendant Leandro Legaspi, represented by counsel, filed a Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(1)A)(i) requesting sentence modification to time-served, or time-served with home confinement as a condition of supervised release, due to the health risks associated with remaining incarcerated during the COVID-19 pandemic.  (Motion [ECF NO 59.]) On September 2, 2020, the Government filed a Response in Opposition. (Opposition [ECF No. 64.])   Defendant filed a Reply on September 8, 2020.  (Reply [ECF No. 65.])

I.     **BACKGROUND**

On July 18, 2017, Defendant, along with Vladimir Abalos, sold approximately two ounces of methamphetamine to agents via a confidential course. On March 15, 2018, Defendant Legaspi was arrested on a complaint charging him with distribution of methamphetamine.  A grand jury returned an indictment against Legaspi and Abalos on

March 29, 2018. On May 18, 2018, Legaspi pled guilty to the charge. On July 30, 2018, the Court sentenced Legaspi to 75 months' imprisonment and four years of supervised release. The Court further recommended that Defendant participate in the Residential Drug Assessment Program (RDAP) while incarcerated. (Judgment at 2 [ECF No. 43.]) Defendant is incarcerated at FCI Lompoc and has served about 29 months of the original sentence. Defendant had completed about half of the RDAP course prior to COVID, and now participates in a scaled back program. (Motion Exhibit A at 4 [ECF No. 59-1.])

Defendant is forty-nine years old, and suffers from type 2 diabetes, high blood pressure, and obesity. (Mot. Exhibit A at 3 [ECF No. 59-1.]) In early May, Defendant tested positive for COVID-19 after passing out with a fever of 103.8 degrees and having shortness of breath. Defendant was hospitalized briefly, then quarantined in solitary confinement, but was considered "recovered" in May 2020. (Mot. Ex. J [Sealed.]) Legaspi states in his declaration that he still has shortness of breath, fatigue and debilitating headaches since contracting COVID-19. (Motion, Exhibit A at 3.) Defendant is concerned he may relapse, or be re-infected, with serious complications.

Legaspi filed a request for compassionate release with the warden on July 10, 2020, which was denied on July 24, 2020. (Motion, Ex. B, 8, 10, 11.)

II. **ANALYSIS**

*A. Exhaustion of Administrative Remedies*

Under 18 U.S.C. § 3582, as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may modify a defendant's sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); Pub. L.No. 115-391, 132 Stat. 5194, §603.

Defendant filed a request for compassionate release with the Warden that was denied on July 24, 2020, and he filed the current Motion on August 18, 2020, therefore he

has exhausted administrate remedies and this Court may consider the substance of his Motion.

### B. Extraordinary and Compelling Reasons

A court may modify a defendant's sentence "after considering the factors set forth in § 3553(a) to the extent applicable" if it finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13. The Sentencing Commission policy statement includes an application note that specifies the criteria that qualify as "extraordinary and compelling."  First, a defendant may qualify who is suffering from a terminal illness, such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i).  Second, a defendant can meet the standard if he or she is:

> (I)   suffering from a serious physical or medical condition,
> (II)  suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G § 1B1.13, cmt. n.1(A)(ii). Third, a defendant may qualify on the basis of age if he or she is (1) at least 65 years old; (2) experiencing "a serious deterioration in physical or mental health because of the aging process"; and (3) has served at least 10 years or 75% of the sentence, whichever is less.  U.S.S.G. §1B1.13, cmt. n.1(B).  Fourth, certain family circumstances may be considered extraordinary and compelling. U.S.S.G. § 1B1.13, cmt. n.1(C). Last, the Commission provides that the BOP may identify "other reasons" that qualify as "extraordinary and compelling" reasons "other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. §

1B1.13 cmt. n.1(D). The First Step Act was enacted in December 2018, with the stated intention of increasing the availability and use of compassionate release for certain individuals, and paved the way for defendants to file compassionate release motions directly with the court, as opposed to relying on the BOP to file those motions on their behalf. *See* Pub. L.No. 115-391 § 603(b)(titled "INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE")

Defendant contends the combination of the global pandemic and his increased susceptibility due to underlying health issues constitute a "medical condition" and "other reasons" for granting a sentence reduction. (Mot. at 7). Defendant argues that he has multiple serious risk factors for COVID-19 complications including type 2 diabetes, high blood pressure, and obesity. (Motion at 1, Ex. J at 19-20, 26.) In addition to these conditions, Defendant tested positive for COVID-19 in early May, and although largely recovered, he reports having shortness of breath, fatigue, and headaches, and claims that the uncontrolled COVID-19 outbreak at FCI Lompoc where he is housed dramatically increases his risk of serious illness or death. (*Id*. at 15-16).

The Government acknowledges that Defendant's combination of type 2 diabetes, obesity and high blood pressure "present risk factors identified by the CDC as heightening the risk of severe injury or death" if he contracted COVID-19, and that these chronic conditions satisfy the criteria of note 1(A)(ii) because they present "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." (Opposition at 16). Despite these medical conditions, the Government notes that Defendant recovered from his prior COVID-19 diagnosis, so perhaps "he is not as vulnerable as he claims." (*Id*. at 16). The Government argues that the Court cannot grant Defendant's requested relief under the "other reasons" provision Defendant cites because the Court does not have unfettered discretion to determine what constitutes "extraordinary and compelling" reasons under this catch-all provision. (*Id*. at 11-13).

Instead, the discretion within that provision remains delegated only to the BOP, in the Government's view. (*Id*. at 15).

The Court recognizes that COVID-19 has created a serious health threat across the globe, throughout the United States, and particularly in the confined conditions of the BOP system. Although prisons have become a hotspot for COVID-19 outbreaks, the BOP has taken stringent precautions to limit the spread of COVID-19 in its facilities, implementing detailed protocols beginning March 13, 2020, in accordance with its Coronavirus (COVID-19) Action Plan. The Action Plan calls for limited inmate movement within facilities, required face-coverings, handwashing, and quarantine for newly admitted individuals or those returning from court hearings.[1] Despite these efforts, the confined spaces of correctional facilities have made it impossible to prevent all transmission of the virus. FCI Lompoc had a serious outbreak of the virus but as of the present time, no inmates are infected and only three staff members have tested positive.[2]

The parties agree that Defendant has multiple medical conditions which put him at higher risk of serious complications from COVID-19, including Type 2 diabetes and obesity with a BMI of 31.1, as indicated by the Centers for Disease Control (CDC).[3] In addition, Defendant has high blood pressure which might increase his risk of severe illness from COVID-19. The fact that Defendant tested positive for COVID-19, and has since been classified as "recovered" does not remove the danger if he becomes re-infected or relapses. Much is unknown about the virus, but at this time the CDC believes

---

[1] *See* https://www.bop.gov/coronavirus/covid19_status.jsp.

[2] *See* https://www.bop.gov/coronavirus/index.jsp.

[3] The CDC website reflects the most current conditions which place individuals at "increased risk" for severe illness from COVID-19 (Tier 1) or conditions which "might be at an increased risk" (Tier 2). See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html

a person who has tested positive can become re-infected, or relapse.[4] The Government concurs that these conditions diminish Defendant's ability to provide self-care against serious injury or death as a result of COVID-19, but argues that the "other reasons" provision which Defendant cites does not give clear guidance to courts for determining who qualifies, therefore the Court should not find "extraordinary and compelling" reasons exist here.

Despite the fact that Defendant requested relief under the "other reasons" provision of the Sentencing Guidelines, the Court finds Defendant has sufficiently demonstrated "extraordinary and compelling" reasons under 18 U.S.C. §3582 and U.S.S.G. § 1B1.13, cmt. n.1(A)(ii) in light of his combined health conditions because he is at increased risk of life threatening complications if he has a reoccurrence of COVID-19 which continues to be a serious concern in correctional facilities despite the best efforts of the BOP. It would thwart the intention of the statute to find that Defendant did not demonstrate "extraordinary and compelling" reasons simply because he relied on the "other reasons" provision under the circumstances present here.

### C. Danger to the Community

In addition to this Court determining that extraordinary and compelling circumstances exist which favor a reduction in Defendant's sentence, the Court must also consider whether there is a danger to "any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and must weigh the § 3553(a) factors. 18 U.S.C. § 3582. Among those factors are the nature and circumstances of the offense charged, the person's "history relating to drug or alcohol abuse, [and] criminal history," and "whether, at the time of the current offense or arrest, the person was on probation, [or] on parole." 18 U.S.C. § 3142(g)(1), (3)(A), (B).

---

[4] *See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Patients-with-Persistent-or-Recurrent-Positive-Tests.

At the time of sentencing, this Court noted that Defendant had a long history of drug addiction and criminal activity that stemmed from that addiction. Defendant's criminal past includes 10 felony convictions, including two additional federal convictions, between 1990-2018 which resulted in a criminal history score of 19 at the time of sentencing. (PSR at ¶60). The convictions range from offenses as minor as trespassing and possession of controlled substances to offenses as serious as possessing ammunition, drug trafficking, burglary, and grand theft. (PSR at ¶¶ 28-58). The Court noted that despite his extensive criminal history at the time of sentencing, none of the offenses were violent.

Defendant violated parole and probation on numerous occasions, and notably he was on probation in one case and pending disposition on another when he was arrested in this case. (PSR at ¶ 122). The Probation Officer noted that Defendant "has served four terms of probation, both state and federal terms of imprisonment, one combined term of federal supervised release, and six terms of parole with no regard for the law or the damage he has caused to others." (PSR at ¶ 125.) Defendant was a founding member of the Unique Boy Society street gang, and although he is no longer active in that gang, he was a known associate of various gangs at the time of his arrest. (*Id*. at 79).

Defendant acknowledges his long history of drug and alcohol abuse, but contends he has been sober for the past 28 months. (Mot. at 19). He has participated in the RDAP program, and allegedly regrets his past offenses. (*Id*.) Defendant contends he has had no disciplinary incidents while incarcerated. (Mot. at 18).

Defendant is to be commended for his sobriety and the efforts he has made to pursue education and therapeutic care while incarcerated. However, it has been difficult or impossible for Defendant to continue sobriety in the past when he has been in the community, and he has fallen back into criminal habits repeatedly as evidenced by his extensive criminal history. Defendant was convicted in the present case for distributing methamphetamine, a dangerous controlled substance. The crime put the community at risk and it is not the first time he had been convicted of a crime related to

methamphetamine. Defendant himself has struggled with addiction to methamphetamine, indicating its destructiveness. In addition, Defendant was on probation when he was arrested in the present case. The Court finds that Defendant's drug addiction, criminal history, and inability to successfully complete terms of parole or probation indicate that, despite his new sobriety in custody, he would be a danger to others if the Court was to grant his motion for compassionate release. *See* U.S.C. 3142(g).

### D. § 3553(a) Factors

In determining whether a sentence reduction is warranted, the Court must reconsider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant argues the § 3553(a) factors weigh in his favor, because although the nature and circumstances of the offense have not changed since this Court sentenced him to 75 months in custody, the scarcity of substance abuse treatment within the facility, conditions at FCI Lompoc, and reduced access to adequate medical care as a result of the COVID-19 pandemic, along with his well-developed release plan, should now factor into the Court's analysis. (Mot. at 20-22).

In response, the Government argues that Defendant's admission to distribution of methamphetamine, a highly addictive and deadly controlled substance, continue to support a 75- month sentence. (Oppo. at 19). In addition, the Government contends that deterrence and respect for the law dictate that the Court deny Defendant's motion, because Defendant's extensive criminal history indicates a need for specific deterrence, and there is a need for general deterrence in light of the availability of cheaper and more potent methamphetamine from Mexico. (*Id*. at 19-20). Releasing Defendant now would "negatively impact the respect for the laws of the United States" in the Government's view. (*Id*. at 20).

Defendant has struggled with drug addiction since he was 14 and has a long criminal history which includes multiple parole and probation violations. As indicated above, methamphetamine is a highly addictive and destructive controlled substance, one

to which Defendant himself has fought addiction. The Court recognizes that substance abuse programs within correctional facilities are not operating as they were prior to the global pandemic, but Defendant notes that they are still operating, though the RDAP program is "much more limited now." (Mot. at 20). He contends that rehabilitation and treatment opportunities are greater outside of FCI Lompoc, but does not give examples, and the Court notes it is improbable that any program is operating at full capacity in light of the significant restrictions to community gatherings and other activities.

Defendant cites the rate of COVID infections at FCI Lompoc as a reason he should be granted early release, however, the most recent data indicates that Lompoc has successfully reduced the number of COVID-19 cases. As of September 2, 2020, no inmates were infected, as noted above. And while Defendant has successfully completed a number of college courses during incarceration and has maintained good relationships with staff, other inmates, and his family, these successes do not outweigh the reasons underlying this Court's initial 75-month sentence which included Defendant's years of substance abuse and criminal activity. Other courts have denied compassionate release regardless of a Defendant's eligibility relying on a defendant's criminal history alone. *See e.g. United States v. Aruda*, 2020 WL 4043496 (D. Haw. July 17, 2020). After weighing the pertinent § 3553(a) factors, the Court finds that a reduction in sentence is not supported.

### III.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) without prejudice.

**IT IS SO ORDERED**

Dated:  September 22, 2020

Hon. M. James Lorenz
United States District Judge